UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**PHYLLIS SMITH**                                **CASE NO. 6:22-CV-03050**

**VERSUS**                                       **JUDGE ROBERT R. SUMMERHAYS**

**COMMISSIONER OF SOCIAL SECURITY**              **MAGISTRATE JUDGE CAROL B. WHITEHURST**

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Court recommends that the Commissioner's decision be affirmed.

### Administrative Proceedings

Claimant, Phyllis Smith, fully exhausted her administrative remedies before filing this action in federal court. She filed an application for disability insurance benefits (DIB) and an application for supplemental security income benefits (SSI), alleging disability beginning on March 1, 2020. (Rec. Doc. 7-1, p. 246-47). Her applications were denied. She then requested a hearing, which was held on December 16, 2021, before Administrative Law Judge Carolyn Smilie. (Rec. Doc. 7-1, p. 34 et al). The ALJ issued a decision on December 29, 2021, concluding that Claimant was not disabled within the meaning of the Social Security Act from the

claimed disability onset date through the date of the decision. (Rec. Doc. 7-1, p. 20-29). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 7-1, p. 5). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## **Summary of Pertinent Facts**

Claimant was born on March 19, 1970. She was 49 years old on the alleged disability onset date and 51 years old at the time of the ALJ's decision. She obtained a high school diploma and completed some college. (Rec. Doc. 7-1, p. 37). Her employment history includes working in the medical field, both in hospitals and in home health, as a licensed practical nurse (LPN) and/or certified nursing assistant (CNA). (Rec. Doc. 7-1, p. 41-45). She alleged that she has been disabled since March 1, 2020, due to cervical radiculopathy, with neck pain and tingling and numbness on the left side. Nonetheless, she has continued to work three to four hours a day as a sitter in the home health setting. (Rec. Doc. 7-1, p. 48). She also has diabetes, which causes numbness and tingling in her legs and feet. (Rec. Doc. 7-1, p. 50). She has taken medication for anxiety and depression since 2005 or 2006, but she has not treated routinely with a mental health professional. (Rec. Doc. 7-1, p. 50-51). She testified that she occasionally uses a walker, which she testified was prescribed (Rec.

2

Doc. 7-1, p. 55); however, medical evidence does not support this statement. (Rec. Doc. 7-1, p. 659). She lives alone, and her daughter and grandson assist with some chores. (Rec. Doc. 7-1, p. 55).

The medical records in the record reveal the following pertinent history:

- Claimant has treated routinely at Iberia Comprehensive Community Health beginning in 2016 through at least 2021. She frequently complained of lower back pain and vertigo. Additional issues included cervical radiculopathy, morbid obesity, hypertension, arthritis, chronic pain, hiatal hernia, gastritis, and hypercholesterolemia, and depression. Treating physicians treated her with medication. Physical examinations revealed less strength in her left arm and hand, decreased grip strength, incomplete abduction of the shoulder, and paresthesia/numbness. (Rec. Doc. 7-1, p. 372-448; 680-89; 700-18). She also presented to the emergency room on multiple occasions in 2018 for chest pain and feeling jittery, and after which she was noted to have suffered from anxiety and ongoing sleep apnea issues. She identified her diagnosis of cervical spinal stenosis as the source of her anxiety. (Rec. Doc. 7-1, p. 484-597).

- Claimant's records show one treatment with a licensed social worker for anxiety. In January 2019, Claimant stated that her anxiety was caused by her pain, and she couldn't be by herself. The plan was for Claimant to begin journaling and watching relaxation meditations online. She was to begin breathwork at a follow up session, but the records do not evidence any further sessions. (Rec. Doc. 7-1, p. 396-98).

- Claimant saw Dr. Moses Kitakule for approximately six months beginning in September 2018 for sleep apnea. She had a noted history of anxiety and panic attacks. (Rec. Doc. 7-1, p. 338-60). See also treatment records for sleep disorder at Rec. Doc. 7-1, p. 473.

- Claimant began seeing Dr. Reynard Odenheimer, neurologist, in February 2019, but she was discharged from the office for failure to keep her appointments. A nerve conduction study during her treatment was abnormal and revealed diffuse sensory motor polyneuropathy, carpal tunnel syndrome, mild bilateral ulnar neuropathies at the wrists, and chronic bilateral C7 radiculopathies. (Rec. Doc. 7-1, p. 364-66).

- The report from a February 5, 2021 Med Plus Disability Evaluation obtained by the state disability office showed that Claimant is able to ambulate without an assistive device and that she had an abnormal, mildly antalgic gait (left leg). The physical exam showed tender lower lumbar and left sciatic notch. The sitting straight leg raise test was 80 degrees on the left leg and positive for the straight leg raising with pulling pain in foot. The right leg was negative without pain. She had normal grip strength and fine and gross manipulative skills in both hands with no evidence of muscular atrophy. She had weakness in the left proximal arm of 4/5 and the left leg of 4/5 with abnormal sensation. The examiner, Dr. Tosheiba Holmes, found the following issues: osteoarthritis, spinal stenosis, sleep apnea, de Quervain's disease, radiculopathy of cervical region, left radiculopathy and left ulnar neuropathy, chronic back pain with left radiculopathy and radiculitis, and chronic gastritis. Dr. Holmes concluded Claimant has the limited abilities to bend or stoop and to reach, handle or grasp. She was able to ambulate with difficulty but did not require an assistive device. (Rec. Doc. 7-1, p. 658-64).

- Dr. Joseph Salande, clinical psychologist conducted a psychological evaluation for the disability office on February 6, 2021. Claimant was able to drive herself and ambulated with a slow but normal gait. She reported being separated from her husband and having a close relationship with her three adult children who lived nearby. Dr. Salande noted obvious anxiety and mild restlessness. His diagnostic impression was major depressive disorder with anxious distress and somatic symptom disorder. He concluded that her symptoms were "moderate but significant" and that she would benefit from direct mental health care (outpatient therapy) to help her manage her anxiety and depression. He opined that her physical pain and health issues interact significantly with her mental health symptoms to her detriment; however, he concluded that she could sustain effort and persist at a normal pace over the course of a 40-hour work week and that her social and interpersonal functioning were normal. She would be able to relate to co-workers and supervisors effectively and could likely tolerate the stress and pressure of daily work activities and demands. She was capable of managing her own funds. (Rec. Doc. 7-1, p. 668-72).

- With input from DDS psychologist Dr. Ryan Scott, DDS medical consultant Dr. Ronald Painton assigned a light residual functional capacity on March 8, 2021. (Rec. Doc. 7-1, p. 100-18; 695).

- An August 24, 2021 CT and MRI of her head were normal. Although a comparison study from January 11, 2019 was noted, the medical records in the record do not contain any imaging studies. A cervical Xray in August 2021

4

showed anterior endplate osteophytosis with no fractures or dislocations. (Rec. Doc. 7-1, p. 723-29).

- On reconsideration, DDS medical consultants, Dr. James Pinkston (psychology) and Dr. Johnny Craig agreed in June 2021 with the findings that Claimant was capable of performing light duty work. (Rec. Doc. 7-1, p. 148-54).

The ALJ found that Claimant suffered from severe impairments of degenerative disc disease and degenerative joint disease but that she was capable of performing light work subject to certain physical limitations, such that she was not disabled. (Rec. Doc. 7-1, p. 23-28). Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a

'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### B. **Entitlement to Benefits**

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides

income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). See also *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C. **Evaluation Process and Burden of Proof**

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D.     The ALJ's Findings and Conclusions

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since March 1, 2020. (Rec. Doc. 7-1, p. 22). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: degenerative disc disease and degenerative joint disease. (Rec. Doc. 7-1, p. 23). Claimant challenges this finding to the extent the ALJ failed to consider her mental impairments and obesity as severe.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 24). Claimant does not challenge this finding.

The ALJ found Claimant was capable of performing light work subject to the following limitations: no more than occasional climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; no more than occasional operation of foot controls on the left; no more than frequent handling with the left (nondominant) upper extremity; and the need to avoid concentrated exposure to hazards such as unprotected heights. (Rec. Doc. 7-1, p. 24-27). Claimant challenges this finding.

At step four, the ALJ found Claimant was unable to perform any past relevant work. (Rec. Doc. 7-1, p. 27). Claimant does not challenge this finding.

At step five, the ALJ found that a significant number of jobs which Claimant was capable of performing existed in the national economy. (Rec. Doc. 7-1, p. 28). Claimant challenges this finding to the extent she challenges the ALJ's RFC finding.

### E. The Allegations of Error

Claimant alleges the ALJ erred by 1) failing to consider her mental impairments and obesity as severe impairments; 2) improperly determining Claimant's residual functional capacity (RFC); and 3) improperly relying upon DDS medical examiner, Dr. Johnny Craig, who determined that Claimant was not disabled. The Court interprets Claimant's last assignment of error as a specific challenge to the ALJ's RFC finding.

### F. Whether the ALJ properly considered Claimant's mental impairments and obesity as non-severe impairments.

Claimant first argues that the ALJ erred by not classifying her anxiety, depression, and obesity as severe impairments. To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521 ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory

10

language and legislative history of the Social Security Act. *Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985). Therefore, in *Stone v. Heckler*, the Fifth Circuit established the following standard for determining whether a claimant's impairment is severe: an impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Id*. at 1101. See also *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

1. <u>Whether Claimant's anxiety and depression are severe impairments.</u>

"The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404. Subpart P, Appendix 1, Section 12.00(A).

In considering Claimant's anxiety and depression, the ALJ relied upon Claimant's lack of specialized mental health treatment and records indicating that the impairments were mild to moderate. Although psychological consultant Dr. Salande diagnosed major depressive disorder with anxious distress and somatic symptom disorder, he concluded that Claimant could sustain effort and persist at a normal pace over the course of a 40-hour work week and that her social and

interpersonal functioning were normal. She would be able to relate to co-workers and supervisors effectively and could likely tolerate the stress and pressure of daily work activities and demands. (Rec. Doc. 7-1, p. 668-72). Indeed, Claimant testified that she has continued to work three to four hours per day (Rec. Doc. 7-1, p. 48), evidencing that her mental impairments do not keep her from working. Therefore, the Court agrees that the records do not show that Claimant's mental impairments significantly imposed upon her ability to work. See also *Jeansonne v. Saul*, 855 F. App'x 193, 197 (5th Cir. 2021).

The Court further notes that Dr. Salande opined that Claimant should seek outpatient therapy, and there is no evidence that Claimant has sought mental health treatment, other than a single visit with a social worker. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). Although an indigent claimant who cannot afford prescribed treatment may be considered nonetheless disabled (*id.*), Claimant did not present any evidence regarding her financial inability to seek the recommended counseling.[1] Otherwise, Claimant presented no evidence showing that her anxiety and depression significantly affects her ability to work. The ALJ did not err in classifying Claimant's mental impairments as non-severe.

---

[1] The records indicate Claimant was insured by Medicaid, but there is no evidence that Medicaid would not have paid for counseling.

2. <u>Whether Claimant's obesity is a severe impairment.</u>

Social Security Ruling ("SSR") 02-1p recognizes that "[f]or adults, both men and women, the Clinical Guidelines describe ... a [body mass index ('BMI')] of 30.0 or above as 'obesity.'" SSR 02-1p, *Titles II and XVI: Evaluation of Obesity*, 2002 WL 34686281, at *2 (Sept. 12, 2002). The ruling also expressly acknowledges that obesity can cause functional limitations in sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, stooping, crouching, manipulating, as well as the ability to tolerate extreme heat, humidity, or hazards. SSR 02-1p, 2002 WL 34686281, at *6. Thus, although obesity is not a listed impairment, it can reduce an individual's occupational base for work activity in combination with other ailments. See *Holt v. Saul*, No. 4:19-CV-01894, 2020 WL 2549346, at *3 (S.D. Tex. May 19, 2020); *McGee v. Astrue*, No. H-10-575, 2011 WL 11048325, at *3 (S.D. Tex. Feb. 25, 2011). Because it can have such a wide range of effects on a claimant, obesity must be considered at all steps of the sequential evaluation process. SSR 02-1p, 2002 WL 34686281, at *3. See, also, e.g., *Holt v. Saul*, 2020 WL 2549346, at *3; *Perkins v. Berryhill*, No. 4:18-CV-664-A, 2019 WL 2997082, at *2 (N.D. Tex. June 21, 2019), report and recommendation adopted, 2019 WL 2996055 (N.D. Tex. July 9, 2019).

Although the ALJ did not discuss Claimant's obesity in terms of a severe impairment, she stated without significant detail that Claimant's obesity was

considered. (Rec. Doc. 7-1, p. 25). The Court acknowledges that the ALJ's ruling does not devote meaningful analysis to the effects of Claimant's obesity on her ability to work. Nonetheless, the Court finds the record is devoid of evidence supporting that Claimant's obesity causes significant limitations or a severe impairment. Although Claimant is noted throughout the records as obese, with a BMI of 40 or greater (e.g. Rec. Doc. 7-1, p. 376; 386 *et seq*), she did not identify obesity as a reason she could not work (Rec. Doc. 7-1, p. 273). Further, she was obese before the claimed disability onset date (see Rec. Doc. 7-1, p. 372; 438) when she was working full-time and since the onset date, when she has continued to work three to four hours a day. Accordingly, Claimant's obesity is insufficient grounds to reverse the ALJ's ruling.

    **G.    <u>Whether the ALJ properly determined Claimant's RFC.</u>**

Claimant challenges the ALJ's assessment of light RFC, with certain restrictions. A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)).The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained

in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

In formulating Claimant's RFC, the ALJ relied upon medical evidence that recognized her left-sided weaknesses and antalgic gait (see Rec. Doc. 7-1, p. 658-64), but the ALJ nonetheless assessed a light RFC. In formulating the RFC, the ALJ acknowledged Dr. Holmes's conclusion that Claimant has the limited abilities to bend or stoop and to reach, handle or grasp, and the ability to ambulate with difficulty but without the need for an assistive device. (Rec. Doc. 7-1, p. 25, referencing p. 58-64). Based on these medical findings, the ALJ agreed substantially with the medical consultants that Claimant is capable of light duty. (Rec. Doc. 7-1, p. 25-26 referencing p. 100-118 and 148-54). The ALJ accounted for Claimant's

impairments in assessing certain physical restrictions. The record contains no medical evidence, such as evaluations or reports from orthopedists or neurologists, contradicting the medical consultants' or the ALJ's findings.

Rather than identify contradicting evidence, Claimant challenges the credibility of medical consultant on reconsideration, Dr. Craig, who Claimant claims was unqualified to consider her claim. As the ALJ correctly noted, federal regulations require only that medical consultants be licensed as required by the regulations and do not require that they be credentialed in any particular sub-specialty. 20 CFR §404.1616(b); 20 CFR §404.1502(a)(1). Neither is the Court persuaded to discredit Dr. Craig based upon Claimant's allegations that "Dr. Craig…color[s] his analysis in favor of the Agency that rewards him so well." (Rec. Doc. 8, p. 9). Claimant failed to present any evidence supporting a colorable claim of bias sufficient to undermine the ALJ's decisions. The lack of evidence purporting to show that Claimant is incapable of performing light duty work with the restrictions suggested by the ALJ—not Dr. Craig's supposed bias—supports the ALJ's findings. Accordingly, Claimant's challenge to the ALJ's RFC finding is meritless.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[2]

Signed in Lafayette, Louisiana, this 24th day of April, 2023.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[2] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).